UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
*In re:*                                                                                           Chapter 7

EVADNEY YORRICK a/k/a EVADNEY U. YORRICK                    Case No.:  09-46695-jbr
a/k/a EVADNEY UNA HALL,

                                        Debtor.
-----------------------------------------------------------------x
EVADNEY YORRICK a/k/a EVADNEY U. YORRICK
a/k/a EVADNEY UNA HALL,                                                         Adv. Pro. No.:10-01097-jbr

                                        Plaintiff,

       -against-

Verdelll Callwood, Regency Financial Services
& Investments, Inc., Keith A. Rodd, Dennis
E. Warren, Esq., Dawn P. Warren, Esq., Warren &
Warren, LLP, and Deutsche Bank National Trust
Company as Trustee, WMC Mortgage Company and
Franklin Credit Management Corporation.

                                        Defendants.
-----------------------------------------------------------------x

## **AMENDED COMPLAINT**

        Plaintiff, Evadney Yorrick a/k/a Evadney U. Yorrick a/k/a Evadney Una Hall (the

"Debtor") by her attorneys Pryor & Mandelup, L.L.P., as and for her complaint against

defendants Verdelll Callwood ("Callwood"), Regency Financial Services & Investments, Inc.

("Regency"), Keith A. Rodd ("Rodd"), Dennis E. Warren, Esq. ("D. Warren"), Dawn P. Warren, Esq.

("D. P. Warren"), Warren &

Warren, LLP ("Warren & Warren"), Deutsche Bank National Trust Company as Trustee under a Pooling

and Servicing Agreement dated as of November 1, 2006, Securitized Asset Backed Receivables LLC

Trust 2006-WM3 Mortgage Pass-Through Certificates, Series WM3 ("Deutsche Bank"), WMC Mortgage

Company ("WMC") and Franklin Credit Management Corporation ("Franklin"), states as follows:

**Parties and Jurisdiction**

1. This is an adversary proceeding commenced pursuant to 11 U.S.C. §§ 105, 502, 510(c)(2), Article 15 of the New York Real Property Actions and Proceedings Law, Rule 7001 of the Federal Rules of Bankruptcy Procedure and the New York Common Law.

2. Jurisdiction of this matter is conferred upon this Court under 28 U.S.C. §157(b)(2)(A), (B), (H) and (O), and 28 U.S.C. §1334.

3. Venue is properly placed in this court under 28 U.S.C.§1409.

4. This is a core proceeding as said term is defined in 28 U.S.C. §157(b)(2) as it relates directly to this Chapter 7 case, pending in this District under case number 09-46695-jrb. To the extent that it is determined that this matter or any claim asserted herein is non-core, then notwithstanding, Plaintiff consents to the entry of final orders or judgments by the United States Bankruptcy Court.

5. Plaintiff, Evadney Yorrick a/k/a Evadney U. Yorrick a/k/a Evadney Una Hall ("Mrs. Yorrick" or the "Debtor") is the wife of Mark Yorrick and is an individual residing at 324 Beach 27th Street, Far Rockaway, New York 11691.

6. Defendant, Verdell Callwood ("Callwood") is an individual whose last known address is 103 West 141st Street, New York, New York 10030.

7. Defendant, Regency Financial Services & Investments, Inc. ("Regency"), upon information and belief is a Florida corporation which, until August 26, 2009 was a registered mortgage broker pursuant to Article XII-D of the New York Banking Law, conducting business at 219-15 Merrick Blvd., Laurelton, New York 11413.

8. Defendant, Rodd is an officer, founder and owner of Regency.

9. Defendant D. Warren is an attorney licensed in the State of New York and conducts business at 175-61 Hillside Avenue, Suite 200, Jamaica Estates, New York 11432.

10. Defendant D. P. Warren is an attorney licensed in the State of New York and conducts business at 175-61 Hillside Avenue, Suite 200, Jamaica Estates, New York 11432.

11. Defendant Warren & Warren is a law firm owned by D. Warren and D. P. Warren, conducting business at 175-61 Hillside Avenue, Suite 200, Jamaica Estates, New York 11432.

12. Defendant, Deutsche Bank, alleges it is the holder of a note and mortgage dated July 27, 2006 in the principal amount of $428,000.00. Upon information and belief, Deutsche Bank's business address is 701 Corporate Center Drive, Suite 300, Raleigh, North Carolina, 27607.

13. Upon information and belief, Defendant WMC is a California corporation and a wholesale originator of <u>subprime residential mortgages</u>, owned by GE MoneyBank, allegedly holding a mortgage and note dated July 27, 2006 in the principal amount of $107,000.00 Upon information and belief WMC's principal place of business is 6320 Canoga Avenue, Woodland Hills, CA 91367.

14. Upon information and belief, Defendant Franklin is a New Jersey corporation, doing business at 101 Hudson Street, 25th Floor, Jersey City, NJ 07302.

**Background**

15. Prior to July 27, 2006, the residential property located at 324 Beach 27th Street, Far Rockaway, New York 11691 (the "Premises") was owned by Mark Yorrick ("Mr. Yorrick" or "M. Yorrick"), the Debtor's spouse.

16. Mr. Yorrick purchased the Premises in August, 1983.

17. The location of the Premises is identified by the New York City Department of Finance, Office of the City Registrar, Borough of Queens, Block 15800, Lot 41.

18. Mr. Yorrick and the Debtor have continuously lived at the Premises since their marriage in July, 2000.

19. When Mr. Yorrick purchased the property it was in disrepair.

20. In or about June, 2006, Mr. Yorrick defaulted on the Premises mortgage and the Premises was in danger of being foreclosed on.

21. During that same time, in an effort to save the Premises from foreclosure, the Yorricks consulted with Regency.

22. While at the offices of Regency, the Yorricks spoke with an individual who called himself Rodd. Rodd represented that he was an officer of Regency.

23. The Yorricks were informed by Rodd that their home could be saved and they could obtain funds to repair the premises if they entered into agreements (the "Agreements") whereby a new mortgage(s) would be obtained on the Premises.

24. Rodd explained that M. Yorrick would be required to transfer ownership of the Premises to an intermediary, who would then obtain a new mortgage(s) on the Premises, with the understanding that the Premises would be transferred back to the Yorricks one year later.

25. It was also represented by Rodd that the Yorricks would be able to refinance in their own names at the end of the one year period.

26. Upon information and belief, Rodd also represented that Regency would provide the attorneys necessary to complete the transactions.

27. Rodd also explained that Regency would act as a Mortgage Broker.

28. Upon information and belief, sometime in June, 2006 a document entitled Residential Contract of Sale was prepared.

29. It purports to provide for the sale of the Premises by Mary Yorrick, Mark Yorrick and Colleen Yorrick to Callwood for the sum of $535,000.00.

30. In addition, additional documents were prepared providing for the transfer of the Premises by Mark Yorrick and Colleen Yorrick to Callwood.

31. Colleen Yorrick did not have an interest in the Premises at that date, and no individual named Mary Yorrick had an interest in the Premises..

32. Upon information and belief, Colleen Yorrick did not sign any documents, even though signatures which appear to be hers are on the documents.

33. The documents indicate D. Warren represented Mr. Yorrick and D. P. Warren represented Callwood.

34. Upon information and belief, on June 25, 2006, only two days before the closing date, Callwood completed a Universal Residential Loan Application, in which he stated he had monthly income of $9,600 per month and liquid assets of $10,000.

35. Upon information and belief, on July 27, 2006 a closing date (the "Closing Date") took place at the offices of Regency.

36. As of the Closing Date, the mortgage debt on the Premises totaled approximately $368,768.

37. Upon the Closing Date Regency, as Agent for WMC, obtained approximately $527,708.36 in financing.

38. On July 27, 2006, without consideration, M. Yorrick transferred ownership of the Premises to Callwood.

39. That same day, a document was prepared alleged to be a two year lease of an apartment at the Premises between Callwood and an individual known as Mark Reed.

40. The purported lease represents that monthly rent in the amount of $1,200.00 would be paid by the individual known as Mark Reed.

41. Upon information and belief, Mark Reed does not exist.

42. That same day, Callwood and M. Yorrick entered into a Memorandum of Understanding For the Option to Repurchase (the "Memorandum"). Pursuant to the agreement, which required the Yorricks to pay Callwood an option payment, and to make monthly payments Callwood agreed to allow Mr. Yorrick to purchase the Premises for the "current market price and pay all closing expenses"

43. The agreement specifically states "No landlord-tenant relationship shall be created thereby".

44. That same day, Callwood entered into an adjustable rate note and mortgage (collectively the "First Mortgage") in the amount of $428,000 with WMC.

45. In addition, Callwood and Mr. Yorrick entered into a Post Closing Occupancy Agreement Pursuant to Repurchase Option as expressed in Memorandum of Understanding (the "Post-Closing Agreement").

46. Pursuant to the terms of the Post-Closing Agreement, Mr. Yorrick agreed to pay Callwood $10,000 as an option payment, and to pay all costs of operating the Premises. In return, Callwood agreed not to sell the Premises without the written consent of Yorrick.

47. Simultaneously, Callwood entered into a Second Note and Mortgage with WMC in the approximate amount of $107,000 (the "Second Mortgage").

48. Upon information and belief, Callwood, prior to the Closing Date, provided no information to WMC which would justify granting either Mortgage.

49. Upon information and belief, Callwood filed a Chapter 7 petition in bankruptcy, Case No.: 00-15943-jff.

50. Upon information and belief, Callwood participated in numerous transactions similar to this one, as an agent of Regency.

51. Upon information and belief, D. Warren and D. P. Warren represented Mr. Yorrick and Callwood at the closing, in violation of Rule 1.7 of the New York Rules of Professional Conduct.

52. Upon information and belief, D. Warren, D. P. Warren and their law firm participated in numerous transactions similar to this one.

53. Upon information and belief, Rodd, Regency, D. Warren, D. P. Warren and Warren & Warren acted as agents of WMC with respect to this transaction.

54. As a result of this transaction, Callwood, Regency and the related parties received payment in excess of $45,000.

55. This transaction resulted in a loss by the Yorricks of all the equity in the Premises.

56. Upon information and belief, WMC granted the two mortgages to Callwood in violation of RESPA.

57. Subsequent to the Closing Date, the Debtor and Mr. Yorrick received invoices from various servicing agencies, including HomEq Servicing ("HomEq") at their residence.

58. The Debtor and her husband paid the monthly statements directly.

59. Upon information and belief, HomEq and others accepted the payments from the Debtor and her husband.

60. In the Spring of 2007, consistent with their agreement, the Debtor and her husband returned to Rodd and Regency to refinance the property.

61. Rodd and Regency told the Debtor and Yorrick that only the Debtor could qualify for refinancing and that, in order to qualify, she would have to have an ownership interest in the property.

62. On June 14, 2007 Callwood assigned to the Debtor a 99% interest in the Premises. He allegedly retained a 1% interest.

63. Warren & Warren, L.L.P. prepared the Indenture and, upon information and belief, D. Warren represented Callwood and the Debtor.

64. Rodd did not obtain the promised refinancing.

65. After the assignment to the Debtor, the monthly payment statements were no longer delivered to the Premises.

66. Deutsche Bank placed the loan in default in August, 2007.

67. The Debtor and Mr. Yorrick subsequently sought to contact HomEq to resolve the matter. No one would speak to them, because neither the Debtor nor Mr. Yorrick was the obligor on either the First Mortgage or the Second Mortgage.

68. On or about November 1, 2007 Deutsche Bank commenced a foreclosure action in the Supreme Court of the State of New York, County of Queens.

69. MERS assigned the First Mortgage to Deutsche on November 27, 2007.

70. According to the documents provided by Deutsche Bank, at the time it commenced the foreclosure proceeding, it did not have possession of the note or mortgage, and thus did not have standing to commence the foreclosure proceeding (the "Foreclosure Action").

71. According to the documents, MERS attempted to back date the assignment to November 1, 2006. Upon information and belief this date was the date the Trust of which Deutsche Bank is the Trustee, was formed.

72. On or about July 14, 2008 Deutsche Bank wrongfully obtained a judgment of foreclosure and sale by virtue of the First Mortgage.

73. The Debtor was a named Defendant in the Foreclosure Action.

74. Deutsche Bank failed to provide the Debtor with the entry of the Judgment of Foreclosure.

75. On July 17, 2008 MERS assigned the Second Mortgage to Franklin.

76. On February 4, 2009, with the foreclosure sale imminent, Mr. Yorrick was compelled to file a bankruptcy petition under Chapter 7 of the Bankruptcy Code.

77. On November 11, 2009, Deutsche Bank, by its counsel, filed a motion seeking to modify the automatic stay to allow it to take possession of the Premises.

78. The filing of the lift stay motion (the "Lift Stay Motion") constituted an informal filing of a proof of claim by Deutsche Bank.

79. On November 16, 2009, the undersigned made a qualified written request to Deutsche Bank under the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 demanding production of documents including the original mortgage and note.

80. Deutsche Bank has failed to comply with that request.

81. On June 9, 2010 Deutsche Bank filed an answer to the within Complaint, in which Deutsche Bank alleged it was not able to discuss these loans with the Debtor because the "Debtor is not a signatory of the Note or Mortgage".

**COUNT I**
**(11 U.S.C. § 541 and NY RPAPL § 1501)**

82. The Debtor restates the allegations contained in paragraphs "1" through "81" herein.

83. This cause of action is being brought pursuant to 11 U.S.C. § 541 and Article 15 of the New York Real Property Actions And Proceedings Law.

84. As of the Filing Date, the deed to the Property indicated a 1% interest in the Property was held by Callwood, to the exclusion of the Yorricks and the Estate.

85. A judgment in the Debtor's favor will not affect a person or persons not in being or ascertained at the commencement of the action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the Property.

86. Every person in being who would have been entitled to an estate or interest in the Property by any contingency contained in a devise or grant or otherwise if such event had happened immediately before the commencement of this action has been named as a party to this action.

87. Callwood, Regency, Deutsche Bank and Franklin are the defendants.

88. Callwood, Regency, Deutsche Bank and Franklin are not infants.

89. Callwood, Regency, Deutsche Bank and Franklin are not mentally retarded.

90. Upon information and belief, Callwood, Regency, Deutsche Bank and Franklin are not mentally ill.

91. Upon information and belief, Callwood, Regency, Deutsche Bank and Franklin are not alcohol abusers.

92. As a consequence of Callwood's purported 1% interest in the Property, the Debtor has been unable to enter into any negotiations with Deutsche Bank or Franklin with regard to a loan modification, thereby foreclosing the Debtor's opportunity to preserve her interest in the Property.

93. Accordingly, Callwood's purported 1% interest in the Property is adverse to the Debtor's interest in the Property within the meaning of Article 15 of the New York Real Property Actions And Proceedings Law.

94. Callwood had no legal or equitable basis for retaining a 1% interest in the Property at the time he conveyed a 99%, rather than 100% interest in the Property to the Debtor.

95. Title to the Property was placed in the name of Callwood, based upon the implied or expressed promise, by Callwood, to return same to the Yorricks once a mortgage was obtained.

96. By reason of the foregoing, and pursuant to NY RPAPL § 1501, the Debtor is entitled to judgment against Callwood: (i) declaring that the Debtor had full and exclusive title to the Property, as of the Filing Date; (ii) declaring that the Debtor, as of the filing Date, was the owner of a 100% interest in the Property; and (iii) declaring that the Property, as of the Filing Date, is Property of the Debtor's Bankruptcy Estate by virtue of 11 U.S.C. § 541.

## COUNT II
### (11 U.S.C. §§ 105(a), and 541 and New York Common Law)

97. The Debtor restates the allegations contained in paragraphs "1" through "96" herein.

98. At all relevant times, there was a confidential and fiduciary relationship between the Yorricks and Callwood.

99. Title to the Real Property was placed in the name of Callwood, based upon the implied or expressed promise, by Callwood, to return same to the Yorricks.

100. By reason of the foregoing, the Debtor is entitled to judgment against Callwood, under 11 U.S.C. §§ 105(a) and 541, and New York common law: (i) declaring the Debtor to be the equitable owner, of the right, title and interest in the Property; (ii) declaring that all of the Debtor's right, title, and interest in the Property constitutes property of the Bankruptcy Estate, within the meaning of 11 U.S.C. § 541; and, (iii) imposing, on the Property, a constructive trust, for the benefit of the Bankruptcy Estate.

## COUNT III
### Declaratory Judgment that
### Verdell Callwood Has No Interest in the Property

101. The Debtor restates the allegations contained in paragraphs "1" through "100" herein.

102. Callwood never had possession or control of the Property.

103. Callwood did not provide any consideration for legal title to the Property.

104. Callwood did not make any of the payments paid to the mortgage.

105. Callwood at best had only bare legal title to the Property.

106. Callwood's bare legal title was obtained by deception.

107. By virtue of the above, the Debtor is entitled to a declaratory judgment declaring that the Debtor is the owner of the Property as of the Filing Date, and that the Property is Property of the Debtor's Bankruptcy Estate.

### COUNT IV
### Fraud, Aiding and Abetting Fraud and/or Conspiracy to Commit Fraud Against Deutsche Bank, WMC, Franklin, Rodd, Regency, D. Warren, D. P. Warren and Warren & Warren

108. The Debtor restates the allegations contained in paragraphs "1" through "107" herein.

109. As set forth in detail above, defendants Deutsche Bank, WMC, Franklin, Rodd, Regency, D. Warren, D. P. Warren and Warren & Warren engaged in consumer fraud, aiding and abetting fraud and/or conspiracy to commit fraud in order to obtain fees and strip the Debtor and her husband of their equity in the Premises.

110. The Debtor and her husband, in reliance upon defendant's false statements and lack of disclosure the Debtor and her husband signed away the title of their home.

111. As a direct result of defendant's fraud, aiding and abetting fraud and/or conspiracy to commit fraud, the Debtor and her husband were compelled to file Chapter 7 bankruptcy petitions and are in jeopardy of losing the Premises.

112. By reason of the foregoing, defendants Deutsche Bank, WMC, Franklin, Rodd, Regency, D. Warren, D. P. Warren and Warren & Warren are liable to the Debtor in an amount to be determined but in no event less then the approximate amount of $700,000 plus interest, representing the estimated amount of claims by virtue of the two mortgages.

### COUNT V
### Breach of Implied Covenant of Good Faith and Fair Dealing by Deutsche Bank

113. The Debtor restates the allegations contained in paragraphs "1" through "112" herein

114. Deutsche Bank as successor in interest to WMC breached the implied covenant of Good Faith and

        Fair Dealing, among other things, by commencing a foreclosure action when it was not the holder of the note and Mortgage, when it failed to communicate with a party to the foreclosure proceeding whose interest it was attempting to to extinguish and by failing to provide notice of the Judgment of Foreclosure to the Debtor.

115.    By reason of the foregoing, Deutsche Bank is liable to the Debtor in an amount as yet to be determined but in no event less than the amount of $545,000, which represents the estimated sum of the claim on the First Mortgage.

## COUNT VI
### For Malpractice and Gross Negligence Against
### D. Warren, D. P. Warren and Warren & Warren

116.    The Debtor restates the allegations contained in paragraphs "1" through "115" herein.

117.    D. Warren, D.P. Warren and Warren & Warren as attorneys have a duty to comply with the New York Rules of Professional Conduct.

118.    Through their misconduct as set forth above, D. Warren, D.P. Warren and Warren & Warren failed to perform their duties in accordance with professional practices and standards.

119.    As a result of the wrongful acts set forth above, D. Warren, D.P. Warren and Warren & Warren have directly caused the financial demise of the Debtor and her husband and the possible loss of the Premises.

120.    By reason of the foregoing, D. Warren, D.P. Warren and Warren & Warren.are jointly and severally liable to the Debtor in an amount as yet to be determined, but in no event less than the amounts owed against the two mortgages.

## COUNT VII
### Disallowance of the Deutsche Bank Claim
### Under Sections 105, 502 and 506 of the Bankruptcy Code

121.    The Debtor restates the allegations contained in paragraphs "1" through "120" herein.

122.    Deutsche Bank, by virtue of the above has failed to prove its claim.

123.    By reason of the foregoing, Deutsche Bank's claim should be disallowed in its entirety, and its

mortgage rescinded.

## COUNT VIII
### Disallowance of the WMC/Franklin Claim
### Under Sections 105, 502 and 506 of the Bankruptcy Code

124. The Debtor restates the allegations contained in paragraphs "1" through "123" herein.

125. By reason of WMC's actions with respect to this transaction, WMC/Franklin's claim should be disallowed in its entirety and the mortgage of WMC/Franklin should be rescinded..

## COUNT IX
### Unjust Enrichment Against All Defendants

126. The Debtor restates the allegations contained in paragraphs "1" through "125" herein.

127. As set forth in detail above, Defendants took and caused to be taken from the Debtor and her husband their equity in the Premises.

128. To the extent they profited from this transaction they have been unjustly enriched.

129. By reason of the foregoing, defendants are liable to the Plaintiff for the full amount of all fees and profits derived from this transaction, plus interest, in an amount to be determined at trial.

## COUNT X
### Equitable Subordination - WMC/Franklin and Deutsche Bank

130. The Debtor restates the allegations contained in paragraphs "1" through "129" herein.

131. Deutsche Bank has filed an informal proof of claim .

132. WMC/Franklin has not appeared in this proceeding.

133. The actions of WMC/Franklin, Deutsche Bank , and their agents as set forth above were inequitable and violated laws of the State of New York and the United States of America.

134. By virtue of the above the Debtor and her husband were compelled to file for bankruptcy protection, their equity was lost and their ownership interest in the Premises might be extinguished.

135. By reason of the foregoing, the Debtor is entitled to a judgment (a) under Bankruptcy Code §510(c)(1), equitably subordinating the claim of WMC/Franklin for the purposes of distribution to all other allowed claims and interests in this case; (b) equitably subordinating the Deutsche Bank

claim for the purposes of distribution to all other allowed claims and interests in this case; (c) under §510(c)(2) ordering that any lien securing the WMC/Franklin claim to be transferred to the Debtors estate; and (d) ordering that any lien securing the Deutsche Bank claim to be transferred to the Debtors estate.

WHEREFORE, the Debtor respectfully demands entry of a judgment against defendants as follows:

1. On the Debtor's First Count, judgment against Callwood: (i) declaring that the Debtor had full and exclusive title to the Property, as of the Filing Date; (ii) declaring that the Debtor is the legal owner of the Property as of the Filing Date; and (iii) declaring that the Property is Property of the Debtor's Bankruptcy Estate.

2. On the Debtor's Second Count, judgment against Callwood, under 11 U.S.C. §§ 105(a) and 541, and New York Common Law: (i) declaring the Debtor to be the equitable owner, of the right, title and interest in the Property; (ii) declaring that all of the Debtor's right, title, and interest in the Property constitutes property of the Debtor's Bankruptcy Estate, within the meaning of 11 U.S.C. §541; and, (iii) imposing on the Property a constructive trust for the benefit of the Bankruptcy Estate.

3. On the Debtor's Third Count, judgment against Callwood declaring that the Debtor is the owner of the Property as of the Filing Date and that the Property is property of the Debtor's Bankruptcy Estate.

4. On the Debtor's Fourth Count judgment against Deutsche Bank, WMC/Franklin, Rodd, Regency Financial, D. Warren, D. P. Warren and Warren & Warren in an amount to be determined but in no event less than the approximate amount of $700,000 plus interest, representing the estimated amount of claims by virtue of the two mortgages.

5. On the Debtor's Fifth Count judgment against Deutsche Bank in an amount to be determined but in no event less than the approximate amount of $545,000, which represents the

        estimated sum of the claim on the First Mortgage.

6. On the Debtor's Sixth Count judgment against D. Warren, D. P. Warren and Warren & Warren jointly and severally in an amount to be determined but in no event less than the amount owed on the two mortgages

7. On the Debtor's Seventh Count judgment disallowing the claim of Deutsche Bank in its entirety and rescinding the First Mortgage.

8. On the Debtor's Eighth Count judgment disallowing the claim of WMC/Franklin in its entirety and rescinding the Mortgage.

9. On the Debtor's Ninth Count judgment against Defendants in an amount to be determined at trial.

10. On the Debtor's Tenth Count judgment against Deutsche Bank and judgment against WMC/Franklin equitably subordinating their claims to all other allowed claims and interests and transferring all liens with respect to their claims to the Debtor's bankruptcy estate.

Dated: Westbury, New York
July 26 , 2010

PRYOR & MANDELUP, L.L.P.
Attorneys for Plaintiffs

By:   */s/ John H. Hall, Jr.*
John H. Hall, Jr.
675 Old Country Road
Westbury, New York 11590
(516) 997-0999